GLICKSTEIN, Judge,
dissenting:
The writer first sought the approval of the panel considering this case to request an amicus curiae brief from the National Council of Juvenile and Family Court Judges pursuant to the following order:
The court requests input upon the questions which arise out of (a) the shortness of notice in light of Chapter 39, Florida Statutes (1983) and the Florida Rules of Juvenile Procedure; (b) the oral amendment of petition at hearing; (c) the absence of opportunity for formal discovery; (d) the absence of testimony upon which to grant the motion for continuance and the presence of same after the granting of the motion; (e) the absence of assertion of error by the father in the findings of the trial court; (f) the absence of appeal by the mother; (g) the length of time from the hearing to the present time. The court is concerned with the proper evaluation of the rights of the child and those of the appealing father and desires to make a fully informed decision with a complete understanding of the legal and realistic ramifications of affirmance, reversal or relinquishment of jurisdiction to the trial court.
The purpose for seeking the brief was stated in the last sentence of the order. It is critical to cases involving the tensions between the rights of a child and his or her parent that judges at every level of the system be as fully informed as possible.
When the majority of the panel disapproved the order, I removed all names of parties, witnesses and judges from the record and personally requested assistance from the above Council in rendering a fully informed decision.
The following dissent represents my conclusion and that of the Council.
Rule 8.610(d) of the Florida Rules of Juvenile Procedure specifically allows the court to grant a continuance before or during a hearing for good cause shown by any party. The question before us is whether the rule thus construed places the trial court in error for denying appellant’s motion for a continuance.
The objective of the State in initiating the dependency proceeding before us was clearly to protect the child, indisputably the fundamental purpose of a juvenile and family court. Thusly, the discretionary power of the trial court to grant appellant’s motion for continuance should be considered in this light. I cite the frequently referred to Canakaris ruling in tandem with the mission of the trial court:
*1348 Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of action taken by the trial court, then it cannot be said that the trial court abused its discretion.
Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980).
The majority appears to have ignored the purpose of the trial court in terms of the logic and justification for its decision by failure to accord even a cursory discussion of the interest of the child in this case.[2] Nowhere has their opinion cited the relation of the child’s interest to granting a continuance to the natural father for purposes of conducting discovery. This nation’s high court, having considered due process protections which are constitutionally required in child dependency proceedings, makes clear that a determination of what process is due in a given context requires a balancing of competing interests at stake. Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the same court repeatedly emphasized that the procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved.
What are the competing interests in the matter before us? Clearly, proceedings brought to declare a minor child a dependent of the court represent a unique form of intervention. Unlike the representation of two clearly opposing interests, the dependency proceedings reconcile a complex group of interrelated, but conflicting, interests. The application of procedural safeguards to dependency proceedings should take these distinct interests into consideration: Interests of the parent and child in preserving the family unit, interests of the parent in maintaining custody over the child, the child’s interest in being provided a permanent, stable environment, and the State’s interest in protecting the child.[3]
Undoubtedly, the State must possess a compelling state interest to justify intervention, which interests must be established by a showing of substantial and imminent threats to the welfare of the child. Alsager v. District Court of Polk County, Iowa, 406 F.Supp. 10 (S.D. Iowa 1975), affirmed, 545 F.2d 1137 (8th Cir.1976).
Those of the majority would accord less weight to the interests of the child by concluding that because the child is removed from appellant’s custody, the interest in protecting the child becomes less compelling. Such an argument is inherently deficient. Clearly, child maltreatment cases require a unique legal response, the fundamental thrust of which is to protect children. This court has determined the applicability of appellant’s claimed right to discovery by comparing the case before us with court precedents related to matters of civil procedure. This methodology negates the flexible nature of due process and is especially inappropriate for determining procedural safeguards necessary in proceedings instituted to adjudge dependency.
Through my dissent, I do not advocate abrogation of constitutional protections in family court dependency proceedings as a matter of procedure. I do, however, advocate the need to adopt evidentiary and procedural restrictions to protect the child from further trauma consistent with constitutional due process.
In this vein, I am reminded of a quote contained within the final report of the United States Attorney General’s Task Force on Family Violence published in September of 1984. Referring to the need for judges to establish expeditious guidelines for handling abuse and neglect cases, the *1349 Task Force quotes the sister of a child abuse victim:
My sister asked what the record number of continuances on a case such as this was. The clerk stated that he remembered one case was continued twelve times_ She then said “Well, I guess he will have to kill me before this thing gets settled.” We were postponed again that day to July 14, 1983.... On that day we buried my sister.
Id. at p. 41.
Accordingly, I would submit that such responsible persons as we sitting at bar differ as to the propriety of action taken by the trial court. Relying upon the authority of Canakaris it cannot, therefore, be said that the trial court abused its discretion. I would affirm the ruling.

. Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942), promulgates the standard for determining reasonableness as whether there is logic and justification for the result.

. See Areen, Intervention Between Parent and Child: A Re-Appraisal of the State’s Role in Child Neglect and Abuse Cases, 63 Geo. L.J. 887 (1975).